IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 25-cv-01976-PAB-MDB

BREANNA GASPER,

Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF CUSTER COUNTY,
CUSTER COUNTY SHERIFF'S OFFICE,
LLOYD RICH SMITH, Sheriff,
SUSAN BARNES, Undersheriff,
MATTHEW GRIBBLE, and
LINDA STANLEY,

Defendants.

---

**ORDER**

---

This matter comes before the Court on County Defendants' Motion for Partial Dismissal of Plaintiff's First Amended Complaint [ECF 16] [Docket No. 22]. Plaintiff filed a response, Docket No. 30, and defendants filed a reply. Docket No. 31.

## I. BACKGROUND[1]

Breanna Gasper began working for the Custer County Sheriff's Office (the "Sheriff's Office") as an administrative assistant on January 31, 2022. Docket No. 16 at 4, ¶ 16. In 2022, Ms. Gasper began volunteering as a Victims' Advocate, which became a paid position in the summer of 2023. *Id.*, ¶ 18. In the fall of 2022, Lloyd Rich Smith was elected Custer County Sheriff and was sworn in on January 10, 2023. *Id.* at

---

[1] The facts below are taken from plaintiff's amended complaint, Docket No. 16, and are presumed to be true, unless otherwise noted, for purposes of ruling on defendants' motion to dismiss.

5, ¶ 26. Upon being sworn in, Sheriff Smith appointed Susan Barnes as Undersheriff. *Id.* In December 2023, Sheriff Smith gave Ms. Gasper a commendation medal for her work performance and, at the beginning of 2024, Ms. Gasper received a pay increase. *Id.*, ¶¶ 29-30.

In or around April 2023, Undersheriff Barnes questioned multiple Sheriff's Office employees, including Ms. Gasper, as to whether Deputy Megan Robbins received "special treatment" due to her sexual orientation. *Id.*, ¶¶ 31-32. Ms. Gasper, along with other employees, openly questioned Undersheriff Barnes's behavior towards Deputy Robbins as discriminatory on the basis of sexual orientation. *Id.*, ¶ 33. In or around May 2023, Ms. Gasper, along with other employees, made complaints with the County Human Resources ("HR") Director, Braden Wilson, and with Sheriff Smith. *Id.*, ¶ 34. These complaints were regarding Undersheriff Barnes's purported discriminatory behavior and other misconduct by Undersheriff Barnes, including engaging in nepotism and violating department policy. *Id.* at 6, ¶ 36. Mr. Wilson asked the Employers Council, a third-party organization, to investigate the complaints. *Id.*, ¶ 37. Mr. Wilson also noted that Sheriff Smith was refusing to participate in the investigation. *Id.* In or around May 2023, the Employers Council opened an investigation, with Robert Jahn investigating. *Id.*, ¶ 38.

In or around June and July 2023, witnesses gave statements to Mr. Jahn regarding misconduct in the Sheriff's Office. *Id.*, ¶ 40. Ms. Gasper gave her statement to Mr. Jahn on or about June 5, 2023, where she described misconduct by Undersheriff Barnes, including, among other things, that Undersheriff Barnes gave an office access code to her partner, who had been forced to quit the Colorado State Patrol after reports

of misconduct, that Undersheriff Barnes had circumvented procedure in hiring her friend as a sergeant, and that Undersheriff Barnes had lied about Ms. Gasper inappropriately fraternizing with a co-worker. *Id.* at 6-7, ¶ 41. The Employers Council investigation was ultimately suspended at the direction of the Sheriff's Office. *Id.* at 7, ¶ 44.

In 2023 and early 2024, Ms. Gasper reported various issues to Sheriff Smith, including, among other things, that Undersheriff Barnes failed to file a report about a domestic violence incident and that the Sheriff's Office improperly received Jail Based Behavioral Health Services ("JBBS") funds despite not having a jail. *Id.* at 7-8, ¶¶ 45-47. Ms. Gasper informed Undersheriff Barnes that she was mistaken about the appropriate procedures regarding who needed to be present during meetings with a crime victim and that it was improper for Undersheriff Barnes to redact certain records being released to the media. *Id.* at 8, ¶¶ 48-49. In or about February 2024, Ms. Gasper was interviewed by an investigator for the District Attorney regarding evidence in a homicide case that may have been mishandled by Undersheriff Barnes. *Id.*, ¶¶ 50-51. After this interview, Sheriff Smith and Undersheriff Barnes accused Ms. Gasper of going to the District Attorney to slander them. *Id.*, ¶ 52.

In or around December 19, 2023, Undersheriff Barnes solicited others to share their complaints about Ms. Gasper, no matter how trivial. *Id.* at 9, ¶ 55. These complaints were filed between December 19 and December 24, 2023. *Id.*, ¶ 57. On February 12, 2024, Undersheriff Barnes provided a "memorandum of record" to Sheriff Smith in which she claimed that DHS[2] Director Alexis Enslow had informed Undersheriff

[2] The complaint does not specify what DHS is an acronym for. Docket No. 16 at 9, ¶ 58.

Banes that Ms. Gasper acted inappropriately in her victims' advocacy role. *Id.*, ¶ 58. Undersheriff Barnes also accused Ms. Gasper of inappropriately "jumping the chain of command" and sharing information regarding a co-worker's mental health issues. *Id.*, ¶ 60. These complaints were not brought to Ms. Gasper's attention and she was not reprimanded or disciplined for them. *Id.* at 10, ¶ 63.

On January 17, 2024, the Sheriff's Office requested an investigation report from the Employers Council and received the statements Ms. Gasper provided regarding allegations of misconduct. *Id.*, ¶ 64. On January 22, 2024, Deputy Robbins filed a complaint with the Colorado Civil Rights Division ("CCRD"), which named Ms. Gasper as a witness. *Id.*, ¶¶ 65, 67. The Sheriff's Office was provided notice of Deputy Robbins's complaint on or around January 31, 2024. *Id.*, ¶ 66.

On February 15, 2024,[3] Ms. Gasper received a letter from Sheriff Smith that stated such letter "serves as notice of intent to initiate the process to terminate your employment with Custer County" and stating that Ms. Gasper was "not performing to expectations" as the basis for her termination. *Id.* at 10-11, ¶ 68. Ms. Gasper had not previously been reprimanded or disciplined for not performing her job expectations. *Id.* at 11, ¶ 69. The letter stated that, pursuant to Colo. Rev. Stat. § 30-10-506, Ms. Gasper could meet with Sheriff Smith on February 21, 2024 and respond to the "deficiency" described in the letter. *Id.*, ¶ 70. A hearing was held on Ms. Gasper's termination[4] and,

[3] The complaint alleges that Ms. Gasper received this letter on February 15, 2025. Docket No. 16 at 10-11, ¶ 68. The Court presumes this is a typographical error because the complaint alleges Ms. Gasper was officially terminated on March 3, 2024. *Id.* at 11, ¶ 72.

[4] The complaint alleges that this hearing occurred on February 29, 2025, Docket No. 16 at 11, ¶ 71; however, 2025 was not a leap year.

on March 3, 2024, Sheriff Smith informed Ms. Gasper that his decision was final and that she was terminated. *Id.*, ¶¶ 71-72. By late spring of 2024, all of the other Sheriff's Office employees who had complained about misconduct and discrimination were terminated or had resigned. *Id.* at 17, ¶ 104.

In or around April 2023, before Ms. Gasper was terminated, the Sheriff's Office purchased Apple laptops and iPads ("Apple equipment") using JBBS funds. *Id.* at 13, ¶ 74. Ms. Gasper was one of roughly a dozen employees given the Apple equipment for use with certain software. *Id.*, ¶ 75. In or about August or September 2023, Undersheriff Barnes determined that the software was incompatible with the Apple equipment and could not be used for law enforcement purposes. *Id.*, ¶ 76. Sheriff's Office employees were subsequently told they could use the Apple equipment however they wanted. *Id.*, ¶ 77. Nobody requested that Ms. Gasper turn in any equipment when she was terminated; however, Ms. Gasper left the non-Apple laptop she used for her work as a victims' advocate at the Sheriff's Office. *Id.*, ¶ 79. Nobody contacted Ms. Gasper about the Apple equipment for approximately two months. *Id.*, ¶ 80. On April 18, 2024, Sheriff Smith sent an email to then-District Attorney Linda Stanley, copying DA Investigator Matthew Gribble, requesting that the District Attorney's Office locate and recover a laptop that appeared to be missing and was believed to be in the possession of Ms. Gasper. *Id.* at 14, ¶ 83. On May 2, 2024, DA Investigators Matthew Gribble and Andrew Corey contacted Ms. Gasper to ask about the laptop. *Id.*, ¶ 85. Ms. Gasper stated that she thought the laptop was at her home. *Id.*, ¶ 86. Mr. Gribble and Mr. Corey followed Ms. Gasper home, and Ms. Gasper voluntarily allowed them to come inside. *Id.*, ¶ 87. Ms. Gasper found the laptop in her vehicle and gave it to Mr.

Gribble and Mr. Corey. *Id.*, ¶ 88. Ms. Gasper was charged with embezzlement of public property under Colo. Rev. Stat. § 18-8-407(1) and misdemeanor theft under Colo. Rev. Stat. § 18-4-401(1)(a). *Id.* at 15, ¶ 90. No other employees who were given Apple equipment were charged with a crime related to their possession of the Apple equipment, including employees who were no longer employed with the Sheriff's Office. *Id.* at 16, ¶¶ 98-100.

On June 25, 2025, Ms. Gasper filed this action. Docket No. 1. In her amended complaint, Ms. Gasper brings claims against the Board of County Commissioners of the County of Custer ("BOCC"), the Sheriff's Office, Sheriff Smith, and Undersheriff Barnes for wrongful discharge under Title VII, retaliation under Title VII, and First Amendment retaliation. Docket No. 16 at 19-24, ¶¶ 116-151. Ms. Gasper brings claims against Sheriff Smith and Undersheriff Barnes for retaliation and wrongful discharge under the Colorado Anti-Discrimination Act ("CADA") and 42 U.S.C. § 1983. *Id.* at 19-20, 23-24 ¶¶ 116-126, 142-151. Ms. Gasper brings claims for First Amendment retaliatory arrest and prosecution under 42 U.S.C. § 1983 and for conspiracy to violate civil rights under 42 U.S.C. § 1985 against Sheriff Smith, Mr. Gribble, and Ms. Stanley. *Id.* at 24-27, ¶¶ 152-171. Finally, Ms. Gasper brings a 42 U.S.C. § 1983 claim against the BOCC, the Sheriff's Office, and Sheriff Smith under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). On December 16, 2025, the BOCC, the Sheriff's Office, Sheriff Smith, and Undersheriff Barnes (collectively, "County defendants") filed a partial motion to dismiss. Docket No. 22. On January 30, 2026, plaintiff filed a response, Docket No. 30, and on February 12, 2026, County defendants filed a reply. Docket No. 31.

On February 6, 2026, Ms. Gasper, Deputy Robbins, and Jason Salbato—a former deputy of the Sheriff's Office—filed a case against the BOCC, the Sheriff's Office, and Sheriff Smith.[5] *Robbins v. Custer County*, 26-cv-00480-PAB-MDB, Docket No. 1. The February 6, 2026 case brings one *Monell* claim under § 1983. *Robbins v. Custer County*, 26-cv-00480-PAB-MDB, Docket No. 19 at 56-58, ¶¶ 378-397. On May 18, 2026, Ms. Gasper filed a motion to dismiss the *Monell* claim in this case. Docket No. 48. On June 1, 2026, County defendants filed a response, Docket No. 52, and on June 16, 2026, Ms. Gasper filed a reply. Docket No. 56.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible." *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)). Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted). A court, however, does not need to accept conclusory allegations. *See, e.g.*, *Hackford v. Babbit*, 14 F.3d 1457,

[5] Deputy Robbins and Jason Salbato have also filed cases based on similar facts to Ms. Gasper's case. *See Robbins v. Custer County Sheriff's Office*, 24-cv-03542-PAB-MDB, Docket No. 1; *Salbato v. Board of County Commissioners of the County of Custer County*, 26-cv-00479-PAB-MDB, Docket No. 1.

1465 (10th Cir. 1994) ("[W]e are not bound by conclusory allegations, unwarranted inferences, or legal conclusions.").

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (alterations omitted).

## III. ANALYSIS

County defendants' motion to dismiss seeks to dismiss the BOCC and the Sheriff's Office as redundant parties to this action, plaintiff's CADA claims against Sheriff Smith and Undersheriff Barnes in their personal capacities, plaintiff's First Amendment retaliation and wrongful discharge claims, plaintiff's First Amendment retaliatory arrest and prosecution claim, plaintiff's § 1985 conspiracy claim, and plaintiff's *Monell* claim. Docket No. 22 at 4-14. The motion to dismiss also asserts that Sheriff Smith and Undersheriff Barnes are entitled to qualified immunity. *Id.* at 7-8.

**A. Proper County Defendant**

County defendants argue that Ms. Gasper naming the BOCC and the Sheriff's Office as defendants is redundant because, under Tenth Circuit precedent, "a claim against a sheriff in his official capacity is 'the equivalent of a suit against the County.'" *Id.* at 4 (quoting *Brown v. McCray*, 74 F. App'x 875, 877 n.2 (10th Cir. 2003) (unpublished)). In response, Ms. Gasper notes that there is a split within the Tenth Circuit regarding which entity should be named. Docket No. 30 at 1-2.

Ms. Gasper is correct that different judges in the District of Colorado have reached different conclusions on this issue. "[T]his District is split as to whether the proper municipal defendant is [the Sheriff's Office] or the County." *Coates v. Adams Cnty. Sheriff's Off.*, 631 F. Supp. 3d 976, 997-98 (D. Colo. 2022) (collecting cases). Ultimately, however, the answer "does not matter because a Colorado statute requires judgments against county officers to be paid from general county funds or a special tax—so whether the sheriff's office or the county is sued, the county would pay any judgment." *Chavez v. Bd. of Cnty. Comm'rs of Lake Cnty., Colo.*, 426 F. Supp. 3d 802, 809 (D. Colo. 2019). Ms. Gasper acknowledges that "[t]he identity of the municipal defendant ultimately does not matter because the county will pay regardless." Docket No. 30 at 4. In *Coates*, 631 F. Supp. 3d at 998, the court held "that the County is the proper municipal defendant, and that Plaintiffs' claims have been properly brought against it by naming [the sheriff] in his official capacity." (citations omitted). The Court adopts this holding for purposes of ruling on the motion to dismiss. Therefore, the Court will dismiss the BOCC and the Sheriff's Office as defendants in this action because Ms. Gasper properly brought suit against Custer County through naming Sheriff Smith in his official capacity.

### B. CADA Claims

County defendants argue that plaintiff's CADA claims against Sheriff Smith and Undersheriff Barnes fail both because employees in their individual capacity cannot be personally liable under CADA and because Ms. Gasper failed to exhaust administrative remedies as to Sheriff Smith and Undersheriff Barnes.[6] Docket No. 22 at 7. Because the Court agrees with the latter argument, it need not address the former argument.[7]

To pursue a CADA claim under Colo. Rev. Stat. § 24-34-402, a party must first exhaust administrative remedies. *See* Colo. Rev. Stat. § 24-34-306(14); *City of Colo. Springs v. Conners*, 993 P.2d 1167, 1169 (Colo. 2000) (noting that exhaustion of administrative remedies is a condition precedent under Colo. Rev. Stat. § 24-34-306(14)). "To properly exhaust administrative remedies under CADA, a plaintiff must file a timely charge of discrimination with the CCRD." *Holsome v. Tek-Experts (Colorado), Inc.*, No. 22-cv-00092-DDD-MDB, 2023 WL 2242502, at *3 (D. Colo. Feb. 27, 2023) (citing Colo. Rev. Stat. § 24-34-306(1)(a)). The charge of discrimination must "stat[e] the name and address of the respondent alleged to have committed the discriminatory or unfair practice." Colo. Rev. Stat. § 24-34-306(1)(a)(I). A plaintiff must

---

[6] "A failure to exhaust remedies is an affirmative defense that may be raised under Rule 12(b)(6)." *Cordova v. Textron Aviation, Inc.*, 2022 WL 2191787, at *3 (D. Kan. June 16, 2022) (citing *Payan v. United Parcel Serv.*, 905 F.3d 1162, 1169 (10th Cir. 2018)); *see also* Lasser v. Charter Commc'ns, Inc., No. 19-cv-02045-RM-MEH, 2020 WL 2309506, at *3 n.1 (D. Colo. Feb. 10, 2020) (analyzing a failure to exhaust CADA's administrative remedies argument under Rule 12(b)(1), but collecting cases whether other courts within the District of Colorado analyzed such an argument under Rule 12(b)(6)).

[7] "[T]he unambiguous language of the aiding and abetting provision of CADA . . . expresses the legislature's clear intent to allow plaintiffs to assert claims against fellow employees and supervisors who aid and abet an employer's unlawful employment practices." *Morales v. L. Firm of Michael W. McDivitt, P.C.*, 641 F. Supp. 3d 1035, 1041 (D. Colo. 2022) (citation omitted).

then "receive a right-to-sue notice from the CCRD." *Matlock v. Denver Health & Hosp. Auth.*, No. 12-cv-03164-MSK-KMT, 2013 WL 3944127, at *1 (D. Colo. July 31, 2013) (citations omitted).

The amended complaint alleges that, "[o]n March 27, 2025, the CCRD served a notice of dismissal and right to sue on Plaintiff Gasper." Docket No. 16 at 2, ¶ 6. County defendants assert that this is insufficient to exhaust administrative remedies against Sheriff Smith and Undersheriff Barnes because there are no allegation that Sheriff Smith or Undersheriff Barnes were named as respondents in the CCRD charge. Docket No. 22 at 7. Ms. Gasper states that it does not matter whether a respondent is named in the CCRD charge because the amended complaint sufficiently states that Ms. Gasper timely filed a charge with the CCRD and received a notice of dismissal and right to sue. Docket No. 30 at 7-8.

Under some circumstances, federal law permits individuals who were not named in an Equal Employment Opportunity Commission ("EEOC") charge to nevertheless be named in a Title VII action so long as certain conditions are satisfied. *See Romero v. Union Pac. R.R.*, 615 F.2d 1303, 1311-12 (10th Cir. 1980). However, "Colorado law requires that to properly exhaust, the complaining party must file a charge with the CCRD 'stating the name and address of the respondent alleged to have committed the discriminatory or unfair practice.'" *Lasser*, 2020 WL 2309506, at *6 (citation omitted). Therefore, courts have held that if a CCRD charge omits the name of a respondent, that party may not be named as a defendant in a CADA suit. *Id.*; *see also Lindsay v. Denver Pub. Schs.*, No. 20-cv-03477-CMA-MEH, 2023 WL 1437874, at *2 (D. Colo. Feb. 1, 2023) ("Colorado law requires an individual to be listed as a respondent in the CCRD

charge in order for administrative remedies to be exhausted against them."); *Ybarra v. Bd. of Cnty. Comm'rs*, No. 25-cv-00490-MDB, 2026 WL 884903, at *5 (D. Colo. Mar. 31, 2026) (collecting cases for the proposition that "[s]everal courts in this district have held that a defendant who is referenced but not identified as a respondent [in a CCRD charge] lacks sufficient notice to satisfy CADA's exhaustion requirement.")).

Ms. Gasper does not allege that Sheriff Smith or Undersheriff Barnes were listed as respondents in the CCRD charge. Nor does Ms. Gasper attach a copy of the CCRD charge or right to sue letter to her complaint or response to the motion to dismiss. Thus, it appears that Sheriff Smith and Undersheriff Barnes were not named as respondents in the CCRD charge. Therefore, Ms. Gasper has not exhausted administrative remedies as to Sheriff Smith and Undersheriff Barnes, and the Court will dismiss the CADA claims against them without prejudice.

### C. <u>First Amendment Claims</u>

Sheriff Smith and Undersheriff Barnes assert that they are entitled to qualified immunity on Ms. Gasper's First Amendment retaliation and wrongful discharge claims. Docket No. 22 at 7-8. Because the Court finds that Ms. Gasper did not state a claim that County defendants violated her First Amendment rights, it need not analyze whether Sheriff Smith and Undersheriff Barnes violated clearly established law.[8]

There are unique considerations when First Amendment claims are brought by a public employee. "[P]ublic employees do not surrender *all* their First Amendment rights by reason of their employment." *Knopf v. Williams*, 884 F.3d 939, 944 (10th Cir. 2018)

[8] Nevertheless, the Court notes that Ms. Gasper did not identify any cases where a plaintiff raised a successful First Amendment claim based solely on speech made internally within an organization, nor is the Court aware of any such case.

(quoting *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006)). Rather, "the First Amendment protects a public employee's right . . . to speak as a citizen addressing matters of public concern." *Id*. (quoting *Garcetti*, 547 U.S. at 417). "The government employer, however, also has a 'countervailing interest in controlling the operation of its workplaces.'" *Id*. (quoting *Lane v. Franks*, 573 U.S. 228, 236 (2014)). "The problem in any case is to arrive at a balance between the interests of the employee, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id*. (quoting *Pickering v. Bd. of Educ. of Township High Sch. Dist. 205*, 391 U.S. 563, 568 (1968) (internal alterations omitted)).

"In striking this balance, the First Amendment prohibits public employers from taking adverse action against employees because of their protected speech." *Id*. at 945. "To determine if an employer's adverse employment action against an employee is an impermissible retaliation under the First Amendment, [courts] apply the *Garcetti/Pickering* test." *Id*. (citing *Trant v. Oklahoma*, 754 F.3d 1158, 1165 (10th Cir. 2014); *Garcetti*, 547 U.S. at 421; *Pickering*, 391 U.S. at 568)); *see also Joritz v. Gray-Little*, 822 F. App'x 731, 738 (10th Cir. 2020) (unpublished); *Kennedy v. Bremerton Sch. Dist*., 142 S. Ct. 2407, 2424 (2022). The *Garcetti/Pickering* test has five elements:

1. The protected speech was not made pursuant to an employee's official duties.
2. The protected speech addressed a matter of public concern.
3. The government's interests as an employer did not outweigh the employee's free-speech interests.
4. The protected speech was a motivating factor in the adverse employment action.

5. The defendant would not have made the same employment decision in the absence of the protected speech.

*Lincoln v. Maketa*, 880 F.3d 533, 538 (10th Cir. 2018) (quoting *Dixon v. Kirkpatrick*, 553 F.3d 1294, 1302 (10th Cir. 2009)); *see also Joritz*, 822 F. App'x at 738; *Knopf*, 884 F.3d at 945; *Helget v. City of Hays, Kansas*, 844 F.3d 1216, 1221 (10th Cir. 2017). "The first three elements are issues of law for the court to decide, while the last two are factual issues typically decided by the jury." *Knopf*, 884 F.3d at 945 (quoting *Trant*, 754 F.3d at 1165).

Sheriff Smith and Undersheriff Barnes argue that plaintiff's speech was not on matters of public concern. Docket No. 22 at 9. "Speech is a matter of public concern if it is of interest to the community." *Porter v. Regents of Univ. of Colo.*, No. 22-cv-00335-MDB, 2023 WL 2664207, at *14 (D. Colo. Mar. 28, 2023) (quoting *Trant*, 754 F.3d at 1165) (internal quotations omitted). "In analyzing this, courts 'focus on the motive of the speaker and whether the speech is calculated to disclose misconduct or merely deals with personal disputes and grievances unrelated to the public's interest.'" *Id.* (quoting *Trant*, 754 F.3d at 1165). "To judge whether particular speech relates merely to internal workplace issues, courts must conduct a case by case inquiry, looking to the content, form, and context of the speech, . . . which includes scrutinizing whether the speaker's purpose was to bring an issue to the public's attention or to air a personal grievance." *Moore v. City of Wynnewood*, 57 F.3d 924, 932 (10th Cir. 1995) (internal quotations and citations omitted). "An employee's speech must not merely relate generally to a subject matter that is of public interest, but must sufficiently inform the issue as to be helpful to the public in evaluating the conduct of government." *Id.* (internal quotations and

citations omitted). "[E]xamples of protected government employee speech" include "communicating with newspapers or . . . legislators or performing some similar activity." *Rohrbough v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 746 (10th Cir. 2010) (citation omitted). Examples of government employee speech that are generally unprotected include "speech pursuant to the employee's duty to report a particular activity," *id.* at 746-47 (citation omitted), "speech directed at an individual or entity within an employee's chain of command," *id.* at 747 (citation omitted), and "internal discussions with human resources." *Porter*, 2023 WL 2664207, at *14.

The amended complaint alleges that Ms. Gasper made comments on issues that relate to the public interest, such as complaints that Undersheriff Barnes engaged in discriminatory behavior, Docket No. 16 at 5, ¶ 33, inappropriately gave a non-employee access to the Sheriff's Office, *id.* at 6-7, ¶ 41, failed to file a report regarding a domestic violence incident, *id.* at 8, ¶ 46, and mishandled evidence in a homicide case. *Id.*, ¶¶ 50-51. Ms. Gasper also made a complaint regarding the Sheriff's Office's alleged misuse of state JBBS funds, which is also a matter of public concern. *Id.*, ¶ 47. However, it is not enough that Ms. Gasper's speech relates to matters of public concern if Ms. Gasper did not make her statements with the purpose of bringing these issues to the public's attention. *Moore*, 57 F.3d at 932. And the allegations in the amended complaint suggest that Ms. Gasper raised these complaints internally rather than in an attempt to apprise the public of alleged misconduct. For instance, the amended complaint alleges that Ms. Gasper raised her complaint of Undersheriff Barnes's discriminatory behavior to Mr. Wilson, the HR Director. Docket No. 16 at 5-6, ¶¶ 33-36. Ms. Gasper's complaint regarding Undersheriff Barnes inappropriately giving non-

employees access to the building was made to Mr. Jahn, as part of an investigation initiated by HR. *Id.* at 6-7, ¶ 41. Ms. Gasper's complaint that Undersheriff Barnes failed to file a domestic violence report and her complaint about the JBBS funds were made to Sheriff Smith. *Id.* at 7-8, ¶¶ 45-47. And Ms. Gasper's comments regarding Undersheriff Barnes's alleged mishandling of evidence were made as part of an investigation by the District Attorney's Office. *Id.* at 8, ¶¶ 50-51.

Ms. Gasper alleges that she "was acting as a 'whistleblower' in questioning and reporting discriminatory, illegal, and unethical conduct within the Sheriff's Office." Docket No. 30 at 11. But Ms. Gasper points to no allegations in the amended complaint stating that she attempted to report any alleged discriminatory, illegal, or unethical conduct to the public. Rather, the amended complaint alleges that Ms. Gasper made such reports to HR, to Sheriff Smith, and as part of an official investigation with the District Attorney's Office. However, as mentioned above, speech made to HR, within an employee's chain of command, or as part of a duty to report a particular activity generally does not constitute speech on a matter of public concern. Therefore, the Court finds that Ms. Gasper's speech was not on a matter of public concern and will dismiss her First Amendment claims with prejudice.[9]

**D. Retaliatory Arrest and Prosecution**

County defendants argue that, because Ms. Gasper's underlying First Amendment theory fails, her claim for First Amendment retaliatory arrest and

---

[9] Because Ms. Gasper's comments were all made internally, the Court finds that any amendment to the complaint regarding such comments would be futile. "If a complaint fails to state a claim and amendment would be futile, dismissal with prejudice is appropriate." *Chase v. Divine*, 543 F. App'x 767, 769 (10th Cir. 2013) (unpublished) (citing *Grossman v. Novell*, 120 F.3d 1112, 1126 (10th Cir. 1997)).

prosecution fails. Docket No. 22 at 12. "In the Tenth Circuit, a claim for First Amendment retaliatory arrest requires a plaintiff to show the three elements of a First Amendment retaliation claim, plus that [she] was subjected to a 'false arrest,' meaning that there was no probable cause." *Eravi v. Owens*, 2026 WL 1551751, at *7 (D. Kan. June 2, 2026) (citing *Bustillos v. City of Carlsbad, N.M.*, 2022 WL 1447709, at *5 (10th Cir. 2022)). Thus, the Court agrees with County defendants and finds that, because the Court has found that Ms. Gasper's First Amendment retaliation claim is deficient, her retaliatory arrest and prosecution claim is also deficient.

**E. <u>42 U.S.C. § 1985(3)</u>**

County defendants argue that Ms. Gasper's conspiracy claim under 42 U.S.C. § 1985(3) fails because she does not allege racial or class-based animus. Docket No. 22 at 13. Ms. Gasper responds that County defendants' assertion that her § 1985 claim requires a showing of racial or class-based animus is "misplaced and not supported by law." Docket No. 30 at 14. In support, Ms. Gasper cites *Brown v. Reardon*, 770 F.2d 896, 906 (10th Cir. 1985). *Id.* But in *Brown*, 770 F.2d at 906, the Tenth Circuit stated that "[t]he Supreme Court has, in our view, consistently required a showing of a class-based animus in order to establish a § 1985 action." The Supreme Court has stated that, to bring a § 1985(3) claim, "there must be some racial, or perhaps otherwise class-based invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *see also Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) ("§ 1985(3) does not apply to all tortious, conspiratorial interferences with the rights of others, but rather, only to conspiracies motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus.") (internal quotations and citation omitted). Ms. Gasper does not argue that she has alleged any racial or

class-based animus, nor does the amended complaint support such a finding. Therefore, the Court will dismiss this claim. Because Ms. Gasper's failure to plead facts relating to racial or class-based animus appears to be based on a misunderstanding of the law, the Court will dismiss the claim without prejudice.

### F. ***Monell*** **Claim**

County defendants argue that Ms. Gasper's *Monell* claim should be dismissed. Docket No. 22 at 13-14. In her response, Ms. Gasper initially opposes dismissal of the claim. Docket No. 30 at 14-16. However, Ms. Gasper has since filed a motion to dismiss the *Monell* claim and consolidate it with her other pending case pursuant to Federal Rule of Civil Procedure 42(a). Docket No. 48. Rule 42(a) contemplates consolidation of "actions," not of claims. Fed. R. Civ. P. 42(a). Thus, there is no basis to "consolidate" her *Monell* claim with her other case, which has already brought a *Monell* claim.

The Court will, however, dismiss the *Monell* claim in this action. "[A] prerequisite to a *Monell* claim is an underlying constitutional violation." *Maddox v. Elder*, No. 21-cv-00235-RMR-MEH, 2022 WL 22860461, at *5 (D. Colo. Mar. 29, 2022), *report and recommendation adopted*, 2022 WL 22860462 (D. Colo. June 15, 2022) (citing *Ellis ex rel. Estate of Ellis v. Ogden City*, 589 F.3d 1099, 1104–05 (10th Cir. 2009); (*Licerio v. Lamb*, No. 20-cv-00681-WJM-STV, 2021 WL 4167341, at *7 (D. Colo. Sep. 14, 2021)). Thus, because the Court has found that Ms. Gasper's First Amendment claims do not sufficiently state a claim, Ms. Gasper has failed to allege an underlying constitutional violation. The Court will dismiss the *Monell* claim without prejudice, as Ms. Gasper might be able to plausibly allege a different underlying constitutional violation.

## IV. CONCLUSION

Therefore, it is

**ORDERED** that County Defendants' Motion for Partial Dismissal of Plaintiff's First Amended Complaint [ECF 16] [Docket No. 22] is **GRANTED**. It is further

**ORDERED** that Plaintiff's Motion to Dismiss/Consolidate *Monell* Claim [Docket No. 48] is **GRANTED** to the extent it seeks dismissal of the *Monell* claim and **DENIED** to the extent it seeks consolidation of the *Monell* claim. It is further

**ORDERED** that the Board of County Commissioners of the County of Custer County is **DISMISSED** as a party to this action. It is further

**ORDERED** that the Custer County Sheriff's Office is **DISMISSED** as a party to this action. It is further

**ORDERED** that plaintiff's first claim for relief is **DISMISSED without prejudice** for failure to exhaust administrative remedies to the extent it is based on a CADA claim against Sheriff Smith and Undersheriff Barnes in their personal capacities. It is further

**ORDERED** that plaintiff's third claim for relief is **DISMISSED without prejudice** for failure to exhaust administrative remedies to the extent it is based on a CADA claim against Sheriff Smith and Undersheriff Barnes in their personal capacities. It is further

**ORDERED** that plaintiff's third claim for relief is **DISMISSED with prejudice** to the extent it is based on a violation of the First Amendment. It is further

**ORDERED** that plaintiff's second claim for relief is **DISMISSED with prejudice**. It is further

**ORDERED** that plaintiff's fourth claim for relief is **DISMISSED with prejudice** as to County defendants. It is further

**ORDERED** that plaintiff's fifth claim for relief is **DISMISSED without prejudice** as to County defendants. It is further

**ORDERED** that plaintiff's sixth claim for relief is **DISMISSED without prejudice**.

DATED September 21, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge